53 CCPA

**Application of David GOLDMAN.**

**Patent Appeal No. 7579.**

United States Court of Customs and Patent Appeals.

Feb. 10, 1966.

Judah B. Felshin, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 1, 25, 33 and 34 in appellant's application [1] for washing machines for washing animal cages, racks and other large articles. The examiner allowed seventeen other claims.

The application is accompanied by no less than seventeen drawings depicting

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 154,254, filed November 22, 1961, for "Washing Machines."

appellant's over-all embodiment of which Figure 1, herewith reproduced, is suffi- ciently representative for the purpose at hand.

FIG I

We deem it unnecessary, for reasons to become apparent, to dissect and point out the various means and elements comprising appellant's over-all mechanism. The application discloses that appellant seeks, through the invention here claimed, to *improve on the machine disclosed in a copending application.*[2] In this latter machine, jets of water are sprayed *simul-taneously* toward each other from opposite sides of the enclosure in which the objects to be washed are placed. It is stated that this arrangement did not prove satisfactory in that the sprays, simultaneously operating, tended to force the dirt washed from the articles toward the middle without being washed all the way off the articles or passed through

2. Serial No. 24,711, filed April 26, 1960, for "Animal Cage Washer."

the drain. An object of the improvement here claimed is the provision of means to *alternately* spray water from each of a pair of opposite sides of the casing, so that the dirt from each side may be washed all the way across to the opposite side of the casing completely off the article and pass to the drain. The object is accomplished through the means of spray heads with rotating apertured spray arms which automatically spray water in the washer for a predetermined period. The heads spray water in opposite directions sequentially.

Claim 33 is reproduced as illustrative:

33. In combination, a casing, a pump having an inlet connected to said casing, spray means in the casing, a drain, means to connect the outlet of the pump to the drain and spray means, a motor for said pump, a drain valve for said drain, a drain valve solenoid for said drain valve, automatic time control means controlling said motor and solenoid, to cause the drain valve to close the drain, and the pump motor to operate the pump, for pumping water to the spray means a plurality of separate times, said spray means comprising a pair of opposed spray devices located at the opposite sides of said casing, each arranged to spray water across the casing toward the other, and diverter means to cause repeated alternate spraying by said spray devices each time water is pumped to said spray means.

Appellant's claimed invention with its asserted advantages is succinctly stated in his brief as follows:

The claims on appeal are directed to that feature * * * wherein the spray alternates from each vertical side wall to the opposite vertical side wall. In this manner, soil is caused to flow from the article * * * washed, all the way across to opposite sides and then downwardly into the tank for discharge. This system * * * is particularly advantageous when washing * * * cages or other articles having horizontal surfaces. If the side sprays operated together, the soil would be pushed by the opposed sprays toward the middle of such surfaces where pieces of soil would cling to said article and to each other. Alternate spraying from opposed vertical side walls prevents this difficulty.

The references are:

| Emanuel | 2,936,770 | May 17, 1960 |
|---|---|---|
| Jones et al. (Jones) | 2,960,990 | November 22, 1960 |
| Jacobs et al. (Jacobs) | 3,078,858 | February 26, 1963 |

The issue here presented is whether appellant's invention as claimed is obvious within the purview of section 103.

Emanuel discloses a car washing apparatus comprising an open-ended tunnel. The vehicle is pulled through the tunnel by a chain conveyor. Along the top, side walls, and bottom of the tunnel spray arms are positioned so that water is sprayed simultaneously against the surface of the vehicle as it moves through the tunnel. The jet nozzles are so arranged and activated that water impinges in opposite directions upon the surface of the car as it moves through the tunnel. The patentee states:

* * * dirt deposits are more quickly eliminated if they are alternately impinged upon by water jets from two different, preferably opposite directions, whereby one jet effects on the deposit a digging action on one side, whereupon the other jet from a substantially opposite direction causes the still adhering deposit to fall-down and break, and washes it off.

For apparent reasons of economy in automatic car washing, the patentee points out that a large number of spraying nozzles directed in opposite directions would complicate the plant and disproportionately consume water and power. It is further stated that it is "immaterial to the invention whether the vehicle moves within the tunnel" or is stationary "and the sets of nozzles are rotatable and displaceable within the tunnel."

Jones relates generally to the art of cleaning and washing houseware such as dishes. It is stated that the system is "capable of washing all surfaces of household ware primarily by direct impingement of fluid jets * * *." An object is to provide distributing means which will impinge jets of liquid from opposite directions against ware racked in the machine. It is further stated that sequential control means, such as a solenoid-operated valve, may be provided for automatically operating the machine through a series of washing and rinsing periods. According to Jones, optimum washability is obtained when the top and bottom sprays are used alternately. The solenoid is electrically connected to the circuitry controlled by the sequential control means so that the alternate top and bottom spraying may be effected in accordance with the programing schedule preset by the operator.

Jacobs relates to an appliance for washing dishes. The pertinent aspects of this reference were aptly pointed out by the examiner. He noted that the reference discloses in combination:

> * * * a casing, a pump having an inlet connected to said casing, spray means in the casing, a drain, means to connect the outlet of the pump to the drain and spray means, a motor for said pump, a drain valve for said drain, a drain valve solenoid for said drain valve, and automatic time control means controlling said motor and solenoid, to cause the drain valve to close the drain, and the pump motor to operate the pump, for pumping water to the spray means a plurality of separate times.

The examiner rejected claims 1 and 25 as being unpatentable over Jones in view of Emanuel. Noting the opposed side wall and top and bottom sprays of Emanuel, he deemed it obvious to substitute these elements for the substantially opposed bottom, front and rear top sprays in the Jones apparatus. In the examiner's view, the side, top, and bottom opposed spray devices of Emanuel could readily be adapted by anyone possessing only ordinary mechanical skill in the art to cooperate with the diverter means in the Jones apparatus to perform the same function that is disclosed by the appellant. In support of the validity of this combination, the examiner noted that the upper sprays of Jones are diagonally impinged at the object to be cleaned from the front and rear top corners, resulting in at least a component of the spray force being directed from the side as well as from the top of the casing. It was considered obvious to one skilled in the art who desired to clean animal cages rather than dishes or cars to use alternating side sprays as the most effective arrangement for that type of work.

The examiner rejected claims 33 and 34 as being unpatentable over Jones and Emanuel as above combined, and taken in further view of Jacobs, pointing out that the Jones disclosure of sequential control means for automatically operating the machine through a series of washing and rinsing periods was an obvious equivalent of appellant's time control means for controlling the pump motor and drain valve solenoid. The examiner observed, and we think correctly, that such sequential control means and complementing circuitry are notoriously old and well known in the art, which fact is amply buttressed by the Jacobs disclosure. From this premise, the examiner reasoned that it would be obvious to substitute the time controlled pump and drain means of Jacobs for the pump and drain means in the Jones-Emanuel apparatus.

In affirming the decision of the examiner, we believe the board correctly disposed of appellant's contention that the

combination of Jones and Emanuel was improper in that neither reference appreciated the desirability of alternate spraying from side to side so that soil on the bottom of animal cages would be flushed to the center of the cages where it would remain. The board stated:

In Jones et al., * * * it was recognized that the best washing action on plates standing vertically on edge is had if the top and bottom sprays directed oppositely along the surfaces of the plates are activated alternately.

In Emanuel, * * * a more efficient washing action of a horizontal surface is depicted where the horizontally directed spray acts first in one direction and then in the other. The fact that the alternate reversal of direction is accomplished in this reference by translating the surface between oppositely acting spray zones does not detract from the efficacy of its teaching when applied to some other mode of effecting the alternate opposing sprays, such as the activation and deactivation of opposite sprays of Jones et al.

\* \* \* \* \* \*

Mere application of this principle to an article having a horizontally rather than a vertically disposed surface, as is the case of Jones et al., by providing alternating opposed horizontally directed sprays on the sides of the enclosure would be a routine following of the prior art to secure only the expected improved washing action.

The board pointed to Jones as teaching a sequential control of the wash cycle and held that mere use of conventional timing means to effect routine washing cycles, as disclosed by Jacobs, would be obvious and produce only the expected results.

We have pointed out somewhat in detail the pertinent disclosures of the cited references. These references are analogous and readily combinable as applied by the board. In our opinion, the differences between the subject matter here sought to be patented and the prior art herein applied are clearly such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

The decision of the board is affirmed. Affirmed.

MARTIN, J., concurs in the result.